**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-02372-AP

IN RE:

DENNIS DEAN ANDERSON,   Bankrutpcy Case No. 08-20339 EEB
                        Chapter 7
and

LYNETTE KAY ANDERSON,

    Debtors.
_____

TERRENCE SPENCER,

    Plaintiff,   Adversary Proceeding No. 08-1552 EEB

v.

FIVE OAK HOMES, INC.,
DENNIS ANDERSON, and
LYNETTE ANDERSON,

    Defendants.

**ORDER AFFIRMING ORDER AND JUDGMENT
OF THE UNITED STATES BANKRUPTCY COURT**

**Blackburn, J.**

    The appellant, Dennis Anderson, timely filed an appeal of a final judgment of the United States Bankruptcy Court for the District of Colorado. In its order and judgment, the Bankruptcy Court resolved an adversary proceeding filed against Anderson, a debtor in the underlying bankruptcy case. Anderson was the defendant in the adversary

proceeding. Anderson, the appellant, filed an opening brief [#21][1]. Terrence Spencer, the plaintiff in the adversary proceeding, filed an answer brief [#24]. In the same document, Spencer asserts a cross appeal. Anderson filed a reply brief and response to Spencer's cross appeal [#29], and Spencer filed a reply [#34] in support of his cross appeal. I affirm the order and judgment of the bankruptcy court.[2]

## I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11 of the United States Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

## II. STANDARD OF REVIEW

I am bound by the bankruptcy court's findings of fact, unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either 1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or 2) bears no rational relationship to the supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*,

---

[1] "[#21]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to this appeal are fully briefed, obviating the necessity for oral argument.

2

232 B.R. 799, *800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995)(internal citations omitted)); *In re Dinviney*, 225 B.R. 762, *769 (10th Cir. BAP (Okla.), 1998) (internal citations omitted). I review the bankruptcy court's conclusions of law *de novo*. *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987).

In this case, the parties do not challenge the bankruptcy court's findings of fact. Rather, they dispute the bankruptcy court's conclusions of law about the application of §38-22-127, C.R.S. based on the undisputed findings of fact of the bankruptcy court.

### III. FACTS

Borrowing liberally from the bankruptcy court's statement of its findings of fact in the adversary proceeding, I summarize the relevant facts as follows. *Spencer v. Five Oaks Homes, Inc., et al.*, Adversary Proceeding No. 08-1552 EEB (United States Bankruptcy Court for the District of Colorado), Order [#40] filed September 23, 2009 (Order). Five Oaks is a Colorado corporation that fabricated modular components of manufactured homes. Anderson is Five Oaks sole shareholder and President. Another of Anderson's companies, ProSource, manufactured some of the structural components that Five Oaks incorporated into its manufactured homes. Five Oaks used both subcontractors and employees of ProSource to assist in the actual construction. On completion of a home, the customer was responsible for arranging its transportation to a home site, attaching it to a foundation, connecting utilities, and arranging for any additional finish work.

Spencer acquired land in New Mexico on which he wanted to build a cabin. His wife is an architect, and she drew up a custom floor plan for their cabin. Most modular

3

home builders only build homes from their stock plans and are not willing to undertake a client's customized plan. Spencer selected Five Oaks to build his cabin because Five Oaks was willing to use Spencer's custom plan. Initially, Anderson and Spencer agreed on a purchase price of $144,100, but after four change orders, they increased the price to $160,582.84.

Five Oaks began construction on Spencer's cabin in the same manner as it did for any other modular home. About a year after the parties entered into their contract, and after Spencer had made payments to Five Oaks totaling $149,215.54, Spencer heard from suppliers on his project that they had not been paid by Five Oaks. Timber Ridge Express had supplied windows at a cost of $12,833.07, but had not received payment from Five Oaks. Fred's Decorating Center had provided the cabinets at a cost of $5,868, but it also had not been paid. Nor had Five Oaks paid for the plumbing fixtures and hardware supplied by Santa Fe Hardware, at a cost of $9,702.96. In total, Five Oaks had failed to pay suppliers $28,404.03. Shortly after Spencer learned that these suppliers had not been paid, Anderson notified Spencer that Five Oaks would be filing for bankruptcy protection and would not be able to complete the project. Spencer took possession of his home in its incomplete state and paid a New Mexico contractor $103,525 to finish construction.

At the time that Five Oaks stopped construction on Spencer's project, it had received $149,215.54 from Spencer. Of this amount, Five Oaks had paid $58,719.92 to workers and material suppliers on Spencer's project. When asked whether he could account for the remaining $90,495.62, Anderson admitted that he could not. To the contrary, he acknowledged that he had deposited Spencer's funds into a general

4

operating account from which he paid bills as they became due, whether or not the bills related to Spencer's project. As its President, Anderson made all of the management decisions for Five Oaks, including all decisions over its use of funds.

The bankruptcy court applied §38-22-127(1), C.R.S. in the adversary proceeding. The parties refer to this statute as the Colorado Trust Fund Statute. Based on its application of that statute, the bankruptcy court concluded that Spencer was entitled to recover the "amount of unpaid bills owed to suppliers and laborers on [Spencer's] home," which amount totaled 28,404.03 dollars. *Order*, p. 8. Under the treble damages provision of the statute, the bankruptcy court entered judgment "in favor of [Spencer] and against Anderson, in the amount of $85,212.09, representing treble damages under the Trust Fund Statute. [Spencer's] claim against Anderson is nondischargeable pursuant to 11 U.S.C. § 523(a)(4)." *Order*, p. 12.

In this appeal, Anderson argues that the bankruptcy court erred in determining that Anderson was a contractor subject to the terms of §38-22-127(1), C.R.S. Anderson argues that he was acting as the manufacturer of a modular home and, as a manufacturer, he was not covered by the terms of §38-22-127(1), C.R.S. In his cross appeal, Spencer argues that the bankruptcy court erred when it concluded that Spencer could recover only the amount of unpaid bills owed to suppliers and laborers on Spencer's home, which totaled 28,404.03 dollars. Spencer argues that, under the Trust Fund Statute, he is entitled to recover all amounts Spencer paid to Anderson and Five Oaks for which Anderson and Five Oaks could not account. The bankruptcy court considered and rejected Spencer's argument.

5

## IV. ANALYSIS - APPEAL

The Trust Fund Statute, §38-22-127(1), C.R.S., provides:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

This statute is titled "Moneys for lien claims made trust funds - disbursements - penalty." *Id*. This statute is part of the general mechanics lien provisions of the Colorado Revised Statutes.

Anderson argues that his contract with Spencer limited Anderson and Five Oaks to the role of a manufacturer because they were merely to provide components to Spencer for the construction of a home. "Anderson was to manufacture a modular home so that Spencer could take possession, transport, and affix the modular home to real property." *Opening brief* [#21], p. 6.

In ***C & W Electric, Inc. v. Casa Dorado Corp.***, 523 P.2d 137 (1974), the Colorado Court of Appeals held that the mechanic's lien statute, a close cousin to the Trust Fund Statute, was not applicable to the manufacturer of a modular home. The court held that the statute did not apply because the work in question was performed in the factory, prior to the sale of the modular home, and not at the request of the owner of the property where the modular home was to be installed. *Id*. at 139. The court held that the crucial missing element was that the work was not performed at the instance of the owner. *Id*. Similarly, the Colorado Supreme Court has held that the seller of log home kits is not a contractor for the purpose of the mechanic's lien statute. The court

6

held that the seller of log home kids was not a contractor subject to the statute because the seller provided only pre-designed preliminary construction plans to its customers, and did not modify the stock plans and was not in charge of the construction of the kits sold. *Schneider v. Metz Lumber Co.*, 715 P.2d 329, 332 (Colo. 1986).

The holdings in *C & W Electric* and *Schneider* are based on the fact that the mechanic's lien statute covers only labor or materials furnished at the instance of the owner of the building or other improvement, or his or her agent. *See, e.g.*, §38-22-101(1), C.R.S. (1982) (applied in *Schneider*); §38-22-101, C.R.S. (2010). Whether a particular party is covered under the mechanic's lien statute is relevant here because the Trust Fund Statute provides that funds are

> held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal . . . .

§38-22-127(1), C.R.S. In other words, the Trust Fund Statute protects, at minimum, those who have or may obtain a mechanics lien, or who may claim against a principal.

The bankruptcy court concluded that Five Oaks acted as a contractor or subcontractor, and not as a supplier, because Five Oaks contracted with Spencer to build a house customized to Spencer's plans, which house would be placed on a specific piece of property owned by Spencer in New Mexico, and all of the work done by Five Oaks was done at Spencer's request. *Order*, p. 7. These facts, the bankruptcy court concluded, distinguish Five Oaks from the modular home builders at issue in *C & W Electric* and *Schneider*. *Id*. I agree with the bankruptcy court's conclusion that, given the undisputed facts in the record, Five Oaks is a contractor as that term is used

7

in §38-22-127(1), C.R.S. As such, Five Oaks was obligated to comply with the provisions of the statute. It is undisputed that Five Oaks did not comply with the statute. The bankruptcy court's imposition of liability against Five Oaks and Anderson under §38-22-127(1), C.R.S., was not in error. Thus, I affirm the bankruptcy court's determination that §38-22-127(1), C.R.S., is applicable to Spencer's claim against Five Oaks and Anderson in the adversary proceeding.

## V. ANALYSIS - CROSS APPEAL

It is undisputed that Spencer paid Five Oaks 149,215.54 dollars, that Five Oaks and Anderson spent 58,719.92 dollars on Spencer's project, and that, in the end, Anderson could not account for the remaining 90,495.62. The amount of unpaid bills owed to suppliers and laborers who worked on Spencer's home at the behest of Five Oaks and Anderson totaled 28,404.03 dollars. Based on this amount, the bankruptcy court awarded Spencer treble damages under the Trust Fund Statute. The bankruptcy court concluded that, under the Trust Fund Statute, Spencer was entitled to judgment for the amount of the unpaid bills and not for the amount of money Spencer paid to Five Oaks and Anderson but for which Five Oaks and Anderson could not account. In his cross appeal, Spencer argues that the bankruptcy court erred when it concluded that Spencer's entitlement to damages under the Trust Fund Statute are so limited. The bankruptcy court noted the dearth of reported decisions addressing this issue. *Order*, p. 8. I agree with the bankruptcy court's interpretation of the statute.

Notably, the title of the Trust Fund Statute is "Moneys for lien claims made trust funds - disbursements - penalty." The statute creates a

> trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who

8

> have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

§38-22-127(1), C.R.S.

The bankruptcy court concluded correctly that "the purpose of the Trust Fund Statute is not to make homeowners whole for all amounts that they have lost due to a debtor's breach of contract, but only for those amounts improperly withheld from laborers and suppliers." *Order*, p. 9. The plain language of the statute demonstrates this purpose. Nothing in the plain language of the statute can be read to provide for an award to a property owner of all monies for which the contractor cannot account. Rather, the language of the statute limits the purpose of the trust created to payment of subcontractors, laborers, material suppliers who have or may have a lien against the property or a claim against a principal or surety. Beyond these specific provisions, the statute does not provide additional protection to a property owner. I affirm the bankruptcy court's determination that Spencer's damages under §38-22-127(1), C.R.S., are limited to the "amount of unpaid bills owed to suppliers and laborers on [Spencer's] home," which amount totaled 28,404.03 dollars. *Order*, p. 8.

## VI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the ruling of the bankruptcy court that §38-22-127(1), C.R.S., is applicable to Spencer's claim against Five Oaks and Anderson **IS AFFIRMED**;

2. That the ruling of the bankruptcy court that Spencer's damages under §38-22-127(1), C.R.S., are limited to the amount of unpaid bills owed to suppliers and laborers on Spencer's home, which amount totaled 28,404.03 dollars, and subject to the treble

9

damages provisions discussed in the bankruptcy court's order, **IS AFFIRMED**; and

    3.  That the **JUDGMENT** entered by the bankruptcy court, ***Spencer v. Five Oaks Homes, Inc., et al.***, Adversary Proceeding No. 08-1552 EEB (United States Bankruptcy Court for the District of Colorado), Judgment [#41] filed September 23, 2009, **IS AFFIRMED**.

    Dated September 27, 2010, at Denver, Colorado.

                              **BY THE COURT:**

                              */s/ Robert E. Blackburn*
                              Robert E. Blackburn
                              United States District Judge